## Oscar Johnson et al., Plffs. in Err., *v.* Commonwealth of Pennsylvania.

An effigy hung from a tree and bearing upon it the words "By George—the Old Liar," and thereby understood by the public to refer to a person in the neighborhood addicted to the exclamation "By George," **is a libel.**

(Argued May 1, 1888.    Decided May 25, 1888.)

July Term, 1887, No. 164, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.    Error to the Quarter Sessions of McKean County to review a judgment on a verdict of guilty in an indictment for libel, May Sessions, 1887, No. 66.    Affirmed.

The indictment against Oscar Johnson and O. Emery Durfee was as follows:

The grand inquest of the commonwealth of Pennsylvania, inquiring in and for the body of the county of McKean, upon their oaths and affirmations, respectively do present that O. Emery Durfee and Oscar Johnson aforesaid, at the county and within the jurisdiction aforesaid, on the night of the 4th day of May, 1887, unlawfully, wickedly, and maliciously intending to injure one Enoch B. Dolley, in the peace of said commonwealth, then and there being, unlawfully, wickedly, and maliciously, did make and cause and procure to be made a certain effigy and figure intending to represent the said Enoch B. Dolley, and then and there unlawfully, wilfully, and maliciously did improvise and appropriate for use as a gibbet and gallows a certain growing tree in a certain street and public highway known as Main street in the borough of Port Alleghany, county aforesaid, and within the jurisdiction aforesaid and near the store where said Enoch B. Dolley was used and accustomed to attend his business, and on the tree so used as a gibbet aforesaid, then and there unlawfully, wickedly, and maliciously did hang up and suspend, and cause and procure to be hung up

Cited in Com. v. Warnagiris, 8 Kulp, 413.

NOTE.—For the manner of charging a criminal libel, where the party referred to is not named, see Com. v. Swallow, 8 Pa. Super. Ct. 539.

and suspended, the said effigy and figure to and upon the said tree so used as a gibbet and gallows, with divers scandalous inscriptions and devices upon and about the same, among others, to wit, the words, "By George,—the Old Liar," meaning him, the said Enoch B. Dolley, and meaning that he, the said Enoch B. Dolley, was an old liar, then and thereby reflecting on the character of the said Enoch B. Dolley and tending to blacken the reputation of him, the said Enoch B. Dolley, and thereby exposing him to public hatred, contempt, and ridicule; and that they, the said O. E. Durfee and Oscar Johnson, did then and there keep and continue and cause to be kept and continued the said effigy and figure hung up and suspended to and from the tree used as a gibbet and gallows aforesaid, together with the several inscriptions and devices aforesaid so affixed as aforesaid for a long space of time, to wit, several hours, and during all that time unlawfully, wickedly, and maliciously did then and there publish and expose the said effigy and figure on the tree used as a gibbet and gallows, suspended to the sight and view of divers good and worthy citizens of said commonwealth passing and repassing in and along the highway aforesaid; to the great scandal, infamy, and disgrace of the said Enoch B. Dolley, to the evil example of all good citizens, and contrary to the form of the act of assembly in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania.

At the trial before OLMSTED, P. J., the defendants moved to quash the indictment for the following reasons: (1) The indictment does not set forth the alleged libelous words with certainty and according to their tenor and effect [1]; and (2) the alleged libelous words were not set forth to be of and concerning the person alleged to have been libeled, the said words being, in themselves, ambiguous, and not showing who was the author or to whom they referred. [2]

Motion refused by the court.

The facts as proved at the trial are stated in the charge.

The court, under objection and exception, permitted the commonwealth to prove that Mr. Dolley had for some years a peculiar and general form of expression and exclamation, to wit, "By George," that he had called the attention of the public to [5]; that he was known to a great many people who spoke

of him, as "By George" [6]; and, on direct examination of
Dolley, that on the morning the effigy was found a citizen, Wil-
son, told him he had been hung in effigy the night before. [7]

One of the counsel for the commonwealth, in arguing the case
to the jury, said *inter alia:*

"Who comes here to contradict what Durfee or Johnson told
to Dolley? Has anyone come here who swears to anything
different? He told Dolley that he was there, and that Durfee
was with him, and that Selden was with him, and that Wilson
was with him. Does anyone come here to swear that he did not
tell Dolley that? Where are the witnesses who say that they
didn't tell Dolley just exactly what Dolley says they told him?"
[8]

The court charged as follows:

The defendants, Durfee and Johnson, are charged in this in-
dictment with the offense of libel. It is alleged that the offense
was committed in the borough of Port Alleghany in this county,
on the night of the 4th of May last, the present month—or the
last month, as this is the first day of the succeeding month. The
evidence has taken considerable time; after all there is not very
much dispute in the case, there is very little conflicting evi-
dence in the case—scarcely any. It is not common that a case is
tried in the courts in which there is so little conflicting evidence
as in this case. The libel is said to have been committed by a
rope, attached to a tree with some crude representation of the
person of an individual, said to have been suspended near the
place of business of the prosecuting witness, Mr. Dolley, on one
of the public streets of Port Alleghany.

You will recollect the evidence as to what the effigy was. It
was crude, of course, and such a one as could be made hastily by
persons who are not artists, and suspended there. Who was it
intended to represent—the figure and the words upon it? Who
was intended to be represented by it? Who did it? These are
the questions that are mainly for your consideration; the two
questions of fact, first—it is best to consider them in that order
—who did that act and suspended that effigy? and what was
the purpose in so doing? Who was intended to be represented
by it?

Now what constitutes the libel is more a question of law for
the court, than of fact for the jury. But the question of who

did this thing, and the question of who it was that they intended to represent by the figure, are questions of fact that are for the jury to determine. We say to you, as a matter of law, that it is libelous to publish that of another which will put him, supposing him to obey the impulses common to men under such circumstances, in a condition of mind which is likely to result in a breach of the peace; and even supposing there be no danger of any breach of the peace on his part, it is defamatory and therefore libelous, to expose him to public hatred, contempt, or ridicule. No words whatever are essential to the constitution of the offense of libel. Ordinarily libels are committed by the publication of articles in newspapers, or the publication in writing or in print, of scandalous matter concerning the character or habits of individuals. That is the more ordinary way in which the offense is committed; but there are many other ways in which it may be committed. To hang a man in effigy is libelous. To expose a man by picture in an obscene position, or in any way that is calculated to bring him into contempt and hatred, and expose him to ridicule, is libelous. To suspend a gallows in front of a man's door is libelous, although there be no words whatever upon the figure.

Now, in this case, it is charged in the indictment that this effigy was suspended in the way it was, and that it was intended to be a libel upon Enoch B. Dolley. It was further charged in the indictment, as a part of the same recital, that upon the figure were the words, "By George,—the Old Liar," or "the Liar"—"the Old Liar" are the words charged in the indictment. The point is taken by counsel for the defendants (and as applicable to many cases it would be well taken) that the words charged in the indictment, where the libel is for the use of defamatory words, must be proved to have been uttered or printed in the very language in which they are charged to have been used or uttered in the indictment itself. You will recollect that some of the witnesses say that the words were "By George, —the Old Liar," and others of them, and the greater number of them, think the word "old" was not in the line; that it was "the Liar" instead of "the Old Liar." They are set forth in the indictment to be the "Old Liar," and there being that difference between the possible proof, and the words charged, the counsel for the defendant have asked us to instruct you that there can be no conviction, and we will now answer the points.

First. The court is respectfully requested to charge the jury that before they can convict the defendants they must not only find that the alleged libelous effigy and inscription were put up and exhibited by the defendants and were libelous, but that the person intended to be libeled and injured thereby was the prosecutor, E. B. Dolley, and they must find all this from the evidence in the case beyond a reasonable doubt.

We affirm this point as a correct statement of the law, as you will see as we proceed further with this charge.

Second. That if there is a variance between the alleged libelous words charged in the indictment, and the alleged libelous words proven to have been exhibited on the trial of the case, the jury must acquit the defendants.

[In this case this point is hardly applicable. The making and suspending of the figure was libelous, without regard to the words upon it, if it was intended to bring the prosecutor, Dolley, into reproach and contempt, and expose him to ridicule.] [3, 4] The idea of this point is that the libel consisted in the words that were upon this figure, and if that was all, the point would be well taken; but we say to you in this case that, without regard to the words upon the figure, it was libelous to suspend the figure there, if the person suspending it intended to represent Enoch B. Dolley; and it would be equally libelous if it was intended to represent someone else and expose them to ridicule. But there could be no conviction in this case then, probably, in the manner in which the indictment is drawn.

Now, we say to you that the words that were upon this figure are only important in this case so far as they may aid the jury, in connection with the other evidence, in determining who it was that was intended to be represented by this figure. That is the proper office of the words that were upon this figure, and they are of no great significance in this case, beyond the aid which they may give you in determining who it was that the perpetrators of this offense meant to expose to public contempt and ridicule, by the suspension of this effigy at the place where it was; for that purpose these words are important, and the testimony bearing on the subject of them is important for the consideration of the jury.

Now, in the first place, who placed this figure in the place where it was found? You will recollect the testimony of several witnesses,—Kernan and Foote, and perhaps others,—who

testify as to the whereabouts of the defendants and two other persons (and especially the two defendants, and that is the one thing important in this case) on that night.    You will recollect they detail where they saw them, and where they met them, and where the defendants were; and they are met at different points not far away up to 12 o'clock on the night of the 4th of May, and this effigy was found the following morning.    At just what time in the morning it was found I do not remember, nor is it very important; I think some witness says that he saw it about 6 o'clock.    What were these defendants doing on that evening? You will bear in mind that they were near the place where this effigy was found; they were passing about in that vicinity, and seemed to be acting in concert or together.    What were they doing and what were they there for?    [You will bear in mind that their purpose is utterly unexplained in the case; there is not the slightest evidence in the case explaining what the business of these defendants was, on the streets of Port Alleghany, at that time in the evening,—not the slightest.]  [9]

[Now, as bearing on the question of who suspended it, you will have to take the testimony of Mr. Dolley also.   He tells you that he went to his store that morning, and was going with his wife to Buffalo, and was told at the store that this effigy had been found and taken down, and told by different persons that it was intended to represent him.   That was the understanding that they had of it.]  [10]

If you believe the testimony of Mr. Dolley, one of the defendants admitted that he was a participant in the placing of this figure there, and in doing this act; [and if you believe the testimony of Mr. Dolley, the other defendant did not deny it, but excused himself by saying that he had a right, or supposed that he had a right, to do it.]  [11]

Now, you must recollect that you are asked to disbelieve the testimony of Mr. Dolley, upon this point; [now, what fact or what circumstance is there in this case, as detailed by the evidence in the case, that goes to convince you and teach you, as jurors in this case, that the testimony of Mr. Dolley is to be disbelieved?    What is there in the case in conflict with it?    Mr. Dolley is unassailable in the case so far as we understand—he is certainly not impeached, and there is no fact or circumstance in the proof of the case showing what he testified to on that point was not true.]  [9]    And now, upon what ground are you to

disbelieve the testimony of Mr. Dolley? If you believe it—and you will consider it in connection with the testimony of Kernan and young Foote as to where these young men were on the night of this transaction—and how are you to come to the conclusion that you should not believe the testimony of Mr. Dolley? It is for you. The question of his credibility, as well as the credibility of all the witnesses in the case, is for the jury, and I do not intend to remove it from you; [but it is entirely proper that we should call your attention to the testimony, and say to you that you should not disbelieve the testimony of Mr. Dolley, unless there is some fact or circumstance in the evidence in the case that should lead you to the belief that Mr. Dolley has sworn untruthfully.] [9]

That is all that we have to say to you on the evidence in the case bearing upon the question of who suspended this effigy. Then if you believe the defendants suspended it—if you believe they did not and were not participants in it you will acquit them—but if you find they suspended it, or were participants in the preparation and suspension of it, you will pass to the consideration of who it was that was intended to be libeled by it; that was intended to be held up to public ridicule, and public contempt. Considerable evidence is given on that question, and we have already said to you that the words on the figure, "By George,—the Liar," or "the Old Liar," are of very trifling significance in the case, except as they bear on the question of who it was that these parties intended to expose to the public contempt and ridicule by the suspension of the effigy, and as bearing on that question, they are of considerable consequence and should receive considerable care and attention at your hands. The words "By George,"—in the first place, How came the persons who made that effigy to put those words upon the effigy? Can you imagine any reason? Were they not under ordinary circumstances about the last words you should expect to find on an effigy of that kind? "By George," standing independent and alone, would have scarcely any signification whatever. They were put there by the person who put them there, for a purpose, and what was that purpose?

The person who put this effigy there would not be likely to write upon it, in plain, legible characters, the name of the person whose figure was intended to be represented by it; that would be an important step in the detection of the offense, and

one that would be likely to be taken. Why were these words "By George" put upon it? Was it not for the purpose of notifying the people of Port Alleghany, who were acquainted with Mr. Dolley and knew his manner and habits, that Dolley was the man intended to be represented there? That is a question for you. [It has been abundantly proven, and not denied, that Mr. Dolley is in the habit of using this foolish expression in frequent conversation—"By George" or "Be George." A good deal has been said about the manner in which he accents the word, but that is of little consequence in the case, because when a man comes to spell it he would spell it in the general way, without much, if any, attention to the particular pronunciation.] [13] It was understood in the community that he used this expression frequently, and so much so that he was frequently spoken of as "By George." Did not the persons who did this act, whoever they may have been, understand and know of this peculiarity of Mr. Dolley? Did they not understand and know that the community understood that habit and peculiarity of Mr. Dolley? And did they not intend by it to give notice to the community, in a covert and secret way, that that figure was intended to be the figure of Mr. Dolley,—that it was suspended there for the purpose of bringing ridicule and contempt upon Mr. Dolley? That is a question entirely for you.

[Suppose Mr. Dolley had been minus a finger or a leg, and this effigy had been without a leg or a finger, would you not have regarded that as intentional evidence that these parties, while they did not put the name of Dolley upon it, were intending to represent Dolley by the figure? It would have been strong evidence; and if it be true that Mr. Dolley had used these words so frequently that he was known by that cognomen in the neighborhood—you may call it a weakness of his, if you please—so that people would recognize that figure as intended to represent him when they saw those words, it would be as strong evidence as if he had a leg off and this statue had been minus a leg.] [12] But this question is entirely for you.

Then, as bearing on the question of whether Mr. Dolley was intended, you will consider the question of Mr. Dolley's conversation with the defendant. If these two defendants did not intend to represent Mr. Dolley, and expose him to public ridicule and contempt, would they not have said, then and there, "Mr. Dolley, we did not mean you at all?" That would have been

the first thing that would have been said, would it not? That is for you. It depends on the credibility of Mr. Dolley also.

Now, this is not a very high offense, but it is nevertheless an offense against the law, and one that is punished, and one that should be punished. It was properly said by the counsel for the commonwealth, that the very gravamen of the offense of libel is from the fact that the tendency of it is to lead to breaches of the peace. Nothing in the world is more likely to excite a man's wrath and anger and indignation, and lead him to violent breaches of the peace, than the suspending of him in a way to expose him to public ridicule and contempt. It is for that reason that this offense is constituted by the law. It is not created by an act of assembly, but was existing in English and Roman times as far back as courts have existed. Mr. Dolley is an old and respected citizen of this county, and is entitled to the protection of the law, but no more than the humblest citizen of the commonwealth. He is entitled to it. And if you believe from the evidence that the defendants are the persons who suspended this effigy, or that they aided in it, and intended thereby to expose Dolley to ridicule and contempt, your verdict should be "Guilty." Otherwise not.

[Considerable evidence has been given showing that the character of the defendants in this community is good. That is of some consequence in the case, and is entitled to your consideration; but you should never give too much consideration to that, because men who are much older than these men have maintained a good reputation through a long and almost entirely spent life, and then have been detected in the commission of gross and great crimes; not crimes like this, but great crimes. A man might have a very good reputation, indeed, in the community and yet be guilty of an offense of this kind.] [14]

If you find the defendants guilty, that is all you have to say. If you find them not guilty, you will then have the costs to dispose of, and you can dispose of them by putting them on the defendants or by putting them on the prosecutor, in such proportions as you see fit, or by putting them on the county. We have very little to say to aid you in determining this question, if you should reach it, of what should be done with the costs. Mr. Dolley, according to his evidence, was informed on this morning that this effigy had been found, and that it was he, and it was natural enough that he should prefer this complaint. It is

hard to see what there is in his conduct that should expose him to these costs, but that is entirely for you. You can put them on him or the defendants, or divide them between the prosecutor and the defendants, or put them on the county.

But the first question is whether the defendants are guilty or innocent of this offense, and if you find they are guilty beyond a reasonable doubt, it is your duty to convict. It is not your province to look to consequences—they are not very severe anyway—but it is nothing to you, and the only question for you is whether these defendants are guilty, and if you find they are, you will be derelict in your duty as citizens and jurors if you do not say so by your verdict. If you do not so find, then your verdict will be, "Not Guilty."

Verdict, guilty, and fine of $25 imposed on each .defendant.

The assignments of error specified: (1, 2) The action of the court in refusing to quash the indictment; (3) the refusal to affirm absolutely the defendants' second point; (4) the answer to the point; (5–7) the admission of evidence; (8) the remarks of the counsel for the commonwealth to the jury; (9–14) the portions of the charge.inclosed in brackets; and (15) the charge as a whole.

*Larrabee & Lewis,* for plaintiffs in error.—The indictment does not profess to set out the alleged libelous words according to their tenor and effect. In an action and an indictment for libel, the law requires the very words of the libel to be set out, in order that the court may judge whether they constitute a good ground of action, and unless this is professed to be set out, the declaration or indictment cannot be sustained. Com. v. Sweney, 10 Serg. & R. 173; Com. v. Wright, 1 Cush. 46, and Com. v. Tarbox, 1 Cush. 66; Wharton, Crim. Law, 8th ed: §§ 1356, 1657.

The attaching of one of the original printed papers to the indictment in the place of inserting a copy is not a sufficient indication that the paper is set out in the very words. Com. v. Tarbox, 1 Cush. 66.

An innuendo cannot alter, enlarge, or extend the natural and obvious meaning of the words, but can only explain something already sufficiently averred, or make a more explicit application to the subject-matter of that which would otherwise be considered ambiguous, and already properly on the record by way of colloquium.

If the actionable quality of the words arises from circumstances extrinsic of them, a colloquium is necessary to show of record that such circumstances existed, and to connect the words with these circumstances. Gosling v. Morgan, 32 Pa. 273; Pittsburgh, A. & M. Pass. R. Co. v. McCurdy, 114 Pa. 554, 60 Am. Rep. 363, 8 Atl. 230; Wharton, Crim. Law, 8th ed. §§ 1658–1660; Van Vechten v. Hopkins, 5 Johns. 211, 4 Am. Dec. 339; Lindsey v. Smith, 7 Johns. 359.

There should be a full and explicit averment that the defendant, under and by the use of the covert terms, wrote of and concerning the persons alleged to be libeled; and that these persons were generally known by the covert or ambiguous appellation, or that the defendant was in the habit of applying to them the opprobrious epithets. Stitzell v. Reynolds, 59 Pa. 488; Miller v. Maxwell, 16 Wend. 16; Com. v. Stacey, 8 Phila. 617; Wharton, Crim. Law, §§ 1658–1660.

It is not competent in an action of libel, to aid the innuendo by the mere opinion of a witness. If this could be done there would be no use for an innuendo. Its office would be supplied by the oath of witnesses who would draw the inference from precedent facts instead of the jury. This is not permissible. Rangler v. Hummel, 37 Pa. 130; Pittsburgh, A. & M. Pass. R. Co. v. McCurdy, 114 Pa. 554, 60 Am. Rep. 363, 8 Atl. 230.

When the court calls the attention of a jury to a particular portion of the evidence most unfavorable to a defendant, and fails entirely to mention the balance of the evidence of the same witness upon the same point, which changes the construction which a jury would naturally place upon the whole, the case falls within the ruling of Galland v. Schroeder, 9 Sad. Rep. 497, notwithstanding the court may have intended to place the testimony before the jury in a fair and proper manner.

It is error to confine the attention of the jury to one view of the case, where there is more than one which they should consider. Garrett v. Gonter, 42 Pa. 143, 82 Am. Dec. 498; Relf v. Rapp, 3 Watts & S. 21, 37 Am. Dec. 528; Egbert v. Payne, 99 Pa. 239.

In the trial of a cause depending upon the facts in evidence, if the court in charging the jury review those only which have a tendency to establish one side of the case, it is calculated to mislead the jury and is error for which the judgment will be reversed. Parker v. Donaldson, 6 Watts & S. 132; Nieman v.

Ward, 1 Watts & S. 68; Bishing v. Third Nat. Bank, 93 Pa. 79, 39 Am. Rep. 726; Stall v. Meek, 70 Pa. 181; Fawcett v. Fawcett, 95 Pa. 376; Pennsylvania R. Co. v. Berry, 68 Pa. 273; Goerson v. Com. 99 Pa. 388.

Several witnesses testified to the good character of the defendants, and no witness testified to the contrary. Evidence of good character is to be regarded as a substantive fact like any other tending to establish the defendant's innocence and ought to be so regarded by both court and jury. Hanney v. Com. 116 Pa. 322, 9 Atl. 339; Heine v. Com. 91 Pa. 145.

*George A. Sturgeon,* Dist. Atty., and *Mullin & McClure,* for the commonwealth, defendant in error.—It is sufficient in indictments if the charge be stated with so much certainty that the defendant may know what he is called on to answer, and the court may know how to render the proper judgment thereon. Over nice exceptions are not to be encouraged, especially in cases which do not touch the life of the defendant. Sherban v. Com. 8 Watts, 213, 34 Am. Dec. 460.

Criminal pleading is no longer the technical thing it was, and courts should look more to substantial justice than artificial nicety. Com. v. Keenan, 67 Pa. 203.

Extrinsic facts must be averred where, without such averments, the libel would appear innocent or unmeaning. But where the writing on the face of it imports a libel, no innuendo is necessary, nor any introductory averments. Odgers, Libel & Slander, *574; Hays v. Brierly, 4 Watts, 392; Van Vechten v. Hopkins, 5 Johns. 225, 4 Am. Dec. 339; Starkie, Slander & Libel, 287; Thompson v. Lusk, 2 Watts, 17, 26 Am. Dec. 91.

The fifth and sixth assignments of error are based upon the allowance by the court of questions objected to as incompetent and irrelevant. They were not incompetent and irrelevant.

The seventh assignment of error complains of the admission, by the court below, of questions put by the commonwealth's counsel to the prosecutor as to what certain persons said to him about the effigy and what it was intended to represent. The questions were put after a severe cross-examination of the prosecutor, the purpose of which was to show that the prosecution was not brought in good faith. To show that the prosecution was brought in good faith the questions were permitted. Wharton, Crim. Ev. 8th ed. ¶ 255.

PER CURIAM:

We think the indictment in this case sufficiently formal to sustain the verdict, nor do we agree with the counsel for the defendants [plaintiffs in error] that the evidence was not sufficient to sustain the charge. The image, itself, as the learned judge who tried the case well said, was a libel, and that it was intended to represent the prosecutor seems to have been at once understood by his neighbors from the manner in which it was labeled.

The judgment of the Quarter Sessions is affirmed, and it is ordered that the record be remitted for the purpose of execution.